ORIGINAL

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

2010 OCT 22 AM 10: 38

| | | |
|---|---|---|
| NIXON PLAISIR, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | CV 310-031 |
| FNU GUNN, Assistant Warden, et al., | ) ) ) | |
| Defendants. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, a federal prisoner held at the McCrae Correctional Facility ("MCF") in McCrae, Georgia, commenced the above-captioned case pursuant to 42 U.S.C. § 1983.[1] As Plaintiff's complaint was filed *in forma pauperis* ("IFP"), it must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984). Pleadings drafted by *pro se* litigants must be liberally construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (*per curiam*), but the Court may dismiss a complaint, or any part thereof, that is frivolous or malicious or that fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e) & 1915A.

---

[1] Plaintiff initially filed the above-captioned case under 42 U.S.C. § 1983. Section 1983, however, only authorizes claims alleging the deprivation of constitutional rights by persons acting under color of state law. The authority to maintain custody of federal prisoners is one created by federal law and reserved solely to the federal government. Thus, Plaintiff may not receive relief under § 1983. See, e.g., Sarro v. Cornell Corr., Inc., 248 F. Supp.2d 52, 64 (D.R.I. 2003). Accordingly, the Court will construe Plaintiff's complaint broadly as an attempt to state a claim under Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971).

## I. BACKGROUND

Upon review of Plaintiff's complaint, the Court finds that Plaintiff has filed the above-captioned case against: (1) FNU Gunn, Assistant Warden at MCF; (2) FNU Carey, Alternate Disciplinary Hearing Officer ("DHO") and Captain at MCF; and (3) James Ross, Captain at MCF. (Doc. no. 1, pp. 1-2.)

Liberally construing Plaintiff's complaint, the Court finds that he makes allegations of racial abuse, due process claims based upon alleged defects in a disciplinary proceeding at MCF, as well as an Eighth Amendment and due process claim based upon allegations that he improperly spent four months in segregation. (Doc. no. 1, p. 3.)

As the current complaint relates to events addressed in a §2241 petition filed by Plaintiff in February of 2010, Plaisir v. Wells, CV 310-008, doc. no. 1 (S.D. Ga. Aug. 13, 2010), a brief review of the prior petition will be helpful in understanding the instant case. In the petition, as in the current complaint, Plaintiff made allegations that his due process rights were violated by the disciplinary procedures at MCF. (Id.) The central incident in that case was between Plaintiff and Correctional Officer Folk ("CO Folk") in which Plaintiff was charged with throwing a bag of food at CO Folk that struck him in the leg. Plaintiff denied he had thrown the bag. Id., doc. no. 10, p. 2. A witness to the incident, Correctional Officer Roberson ("CO Roberson") filed a statement that was later used during Plaintiff's DHO Hearing. Id., doc. no. 6, p. 16. The district court concluded that under the standards set forth by Wolff v. McDonald, 418 U.S. 539 (1974), Plaintiff had received the required due process. Plaisir v. Wells, CV 310-008, doc. no. 10 *adopted by* doc. no. 13 (S.D. Ga. Aug. 13, 2010).

In Plaintiff's instant complaint, he alleges defects with the disciplinary procedures

at MCF when he received his disciplinary report on November 9, 2009 and when DHO Hearings were held on January 8 and January 22, 2010. (Doc. no. 1, pp. 6-7, 9.) Plaintiff's complaint stems from a finding in the Discipline Hearing Officer Report from the January 22, 2010 hearing (hereinafter, "DHO Report") that Plaintiff sent a letter which "request[ed]" that Plaintiff be transferred away from CO Folk and CO Roberson "because of my safety and [CO] Roberson['s] and [CO] Folk['s] safety." Plaintiff goes on to state in the letter that if anything serious were to occur between him and CO Folk or CO Roberson that Warden Wells would be liable in a court of law because of his refusal to transfer Plaintiff. (Id. at 9.) This letter was considered as threatening CO Folk and Roberson with bodily harm, which violated the Prohibited Act Code, and an incident report was drafted. (Id.)

Plaintiff makes three distinct claims regarding alleged violations of his due process rights. First, Plaintiff claims that his due process rights were violated because his letter was received on November 4, 2009, and Defendant Ross did not have an incident report written for Plaintiff until 5 days later. Plaintiff claims that this delay in receiving his disciplinary report violates Program Statement 5270.07 of the Federal Bureau of Prisons. (Id. at 6.) Second, Plaintiff claims that Defendant Ross added more information to a subsequent incident report at the behest of Defendant Carey without informing Plaintiff (id.), and that Plaintiff was not aware of the new report until the initial DHO Hearing held on January 8, 2010. (Id. at 9.) The only mention of Defendant Gunn is found in the DHO Report, which states that Defendant Gunn provided a memorandum which stated that Plaintiff's letter was actually received "on approximately November 9, 20[09]", even though it was "stamped as

3

being received...on November 4, 20[09]."[2] Third, Plaintiff claims that he did not waive his right to attend the January 22, 2010 hearing, although the DHO Report indicates that he did. (Id. at 7, 9.) As a result of the January 22nd hearing, Plaintiff lost thirteen (13) days of good conduct time ("GCT"), forfeited fourteen (14) days of non-vested GCT, and was placed in disciplinary segregation for thirty (30) days. (Id. at 10.)

Plaintiff submitted a Regional Administrative Remedy Appeal ("Remedy Appeal") on February 18, 2010 which laid out the first three complaints discussed above about the disciplinary process at MCF. (Id. at 6.) Plaintiff received a response to his Remedy Appeal on March 3, 2010, which informed him that his case was being remanded to MCF for reconsideration, and that Plaintiff had 30 days to further appeal his Remedy Appeal if he so wished. (Id. at 5.)

Plaintiff's last claim is based upon being improperly kept in segregation for four months while his disciplinary proceedings were ongoing.

## II. DISCUSSION

### A. Pain and Suffering Claim

First, Plaintiff cannot recover monetary damages for pain and suffering without a showing of physical injury. Plaintiff seeks $150,000.00 for the "torture" that he allegedly suffered and the "mental anguish" which he claims continues to affect him. (Doc. no. 1, p. 4.) Under 42 U.S.C. § 1997e(e), "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury

---

[2] Although the dates in the memo are marked as occurring in 2010, there is no dispute that those events actually took place in 2009.

4

suffered while in custody without a prior showing of physical injury." The Eleventh Circuit has unequivocally held that this provision applies to constitutional claims. Harris v. Garner, 216 F.3d 970, 984-85 (11th Cir. 2000) (*en banc*); cf. Napier v. Preslicka, 314 F.3d 528, 532-33 & n.2 (11th Cir. 2002), *reh'g en banc denied*, 331 F.3d 1189 (11th Cir. 2003) (finding that § 1997e(e) bars § 1983 claim for emotional injuries alleged to have resulted from mistaken arrest). Plaintiff has not made any allegation of physical injury, other than the conclusory use of the word "torture" one time in his complaint. (Doc. no. 1, p. 4.) Thus, Plaintiff utterly fails to allege in his complaint any sort of physical harm or abuse, much less any instances of "torture." Accordingly, Plaintiff fails to state a claim upon which relief can be granted as to his request for $150,000.

## B. Disciplinary Procedure Claims

Next, Plaintiff claims that his due process rights were violated by the lateness of his disciplinary report, the changing of that report without his knowledge, and the assertion that Plaintiff forfeited his right to attend the January 22nd DHO Hearing. In Wolff v. McDonnell, 418 U.S. 539 (1974), the Supreme Court recognized that "prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Id. at 556. However, a prisoner facing a disciplinary hearing is still entitled to compliance with the following minimum due process protections: (1) written notice of the charges against him at least 24 hours before his hearing; (2) a written statement by the fact finders as to the evidence relied upon and the reasons for the disciplinary action taken; and (3) an opportunity to call witnesses and present documentary evidence in his defense. Id. at 563-67; see also Asad v. Crosby, 158 F. App'x 166, 172-73

(11th Cir. 2005); Bass v. Perrin, 170 F.3d 1312, 1318 (11th Cir. 1999).

In addition to these procedural due process requirements, the Supreme Court has explained that the degree of proof required at a prison disciplinary hearing to satisfy due process is significantly lower than that required in a criminal prosecution. In Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445 (1985), the Supreme Court concluded that a finding that "some evidence" supports the decision of a prison disciplinary board is enough to satisfy the minimum due process requirements for prisoners facing loss of GCT:

> This standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced . . . ." United States ex rel. Vajtauer v. Commissioner of Immigration, 273 U.S. [103,] 106 . . . [(1927)]. Ascertaining whether this standing is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

Id. at 455-56. The Eleventh Circuit has further explained the limited judicial review that federal courts may undertake in reference to prison disciplinary actions:

> The federal courts cannot assume the task of retrying all prison disciplinary disputes. No de novo review of the disciplinary board's factual finding is required, but the courts must consider whether at least the decision is supported by "some facts"--"whether any evidence at all" supports the action taken by prison officials.

Young v. Jones, 37 F.3d 1457, 1460 (11th Cir. 1994) (quoting Smith v. Rabalais, 659 F.2d 539, 545 (5th Cir. 1981)).

Plaintiff prematurely filed his complaint regarding the first three claims of violations of due process in regards to his disciplinary proceedings. As discussed above, Plaintiff received a reply to his Remedy Appeal on March 3, 2010, which remanded the case down to MCF to be reconsidered. (Doc. no. 1, p. 5.) Plaintiff filed the current action on April 9,

6

2010, and provided no information as to the additional process that occurred after his receipt of the reply to his Remedy Appeal. (Id. at pp 1-12.) The reply indicates that Plaintiff also retained the right to appeal the second decision. It took 40 days between Plaintiff's DHO Hearing and his receipt of the reply to his Remedy Appeal, therefore it is highly unlikely that Plaintiff had received another DHO hearing, appealed that decision and received the results back by the time this complaint was filed. Therefore, Plaintiff's complaint was filed prematurely and as such, Plaintiff fails to state a claim upon which relief can be granted regarding his claims that he did not receive his disciplinary report in a timely fashion, that changes were later made to the report without his knowledge, and that he did not forgo his right to attend the January 22nd hearing.

### C. Claims Based on Segregation

Regarding Plaintiff's claim that he was improperly placed in segregation for four months, his complaint is unclear as to whether he is making an additional due process claim, or whether he is making an Eighth Amendment claim. Therefore the Court will analyze Plaintiff's allegation as making both claims.

As to Plaintiff's due process claim, he must first establish that his segregation deprived him of a liberty interest. There are two circumstances in which a prisoner can be deprived of a liberty interest beyond that already associated with their confinement. See Sandin v. Connor, 515 U.S. 472, 484 (1995). First, a liberty interest may arise if a prisoner's liberty is restrained in a way that exceeds the sentence imposed by the courts. Id. Second, a liberty interest may be created by giving prisoner certain benefits, the deprivation of which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents

7

of prison life." Id.

Here, Plaintiff does not suggest that disciplinary sanctions have resulted in a sentence exceeding that imposed by the court of conviction. Of course, it is true that the Eleventh Circuit has "assumed" that a disciplinary sanction of twelve months of solitary confinement triggers procedural due process protections under Sandin. See Williams v. Fountain, 77 F.3d 372, 374-75 (11th Cir. 1996); but see Wagner v. Hanks, 128 F.3d 1173, 1175-76 (7th Cir. 1997)(Posner, J.) ("[T]he right to litigate disciplinary confinements has become vanishingly small . . . when the entire sanction is confinement in disciplinary segregation for a period that does not exceed the remaining term of the prisoner's incarceration, it is difficult to see how after Sandin it can be made the basis of a suit complaining about a deprivation of liberty."). However, the instant case is easily distinguished from Williams because Plaintiff has not alleged that he was sanctioned for twelve months of solitary confinement- rather he alleges that he improperly spent four months in segregation. Furthermore, Plaintiff acknowledges that his stay in disciplinary segregation was not motivated by retaliation, but rather because he was involved in an ongoing disciplinary procedure. Although prisoners in extended segregation are entitled to regularly scheduled reviews of their segregation status, Spears v. Thigpen, 846 F.2d 1327, 1328 (11th Cir. 1988), Plaintiff makes no allegations that his status was not reviewed properly. Plaintiff simply states in his complaint that he "had to spend four (4) months in segregation because of the wrongful actions of the defendants." (Doc. no. 1, p. 3.) Nowhere in the remainder of Plaintiff's complaint or attachments are the alleged four months in segregation mentioned again. Plaintiff provides no arguments concerning how the alleged four months in segregation may have violated his due process rights. For these

8

reasons, Plaintiff fails to state a claim upon which relief can be granted.

As to any claims that Plaintiff's time in disciplinary segregation violated the Eighth Amendment ban on "cruel and unusual punishment," U.S. Const. Amend. VIII, the Eleventh Circuit has held "that administrative segregation and solitary confinement do not, in and of themselves, constitute cruel and unusual punishment." Sheley v. Dugger, 833 F.2d 1420, 1428-29 (11th Cir. 1987). Here, Plaintiff makes no additional claims, beyond the fact of his confinement itself, such as lack of adequate food, clothing or sanitation, sufficient to sustain a claim under the Eighth Amendment. Therefore, Plaintiff fails to state a claim upon which relief may be granted.

### D. Racial Abuse Claims

Plaintiff also claims in his complaint that he was "under constant racial abuse" by Defendant Carey. (Doc. no. 1, p. 3.) However, that is the first and last mention of racial abuse in the entirety of Plaintiff's complaint. Nowhere does Plaintiff make any specific allegations or give any specific examples of racial abuse by Defendant Carey. "Section 1983 requires proof of an affirmative causal connection between the actions taken by a particular person under color of state law and the constitutional deprivation." LaMarca v. Turner, 995 F.2d 1526, 1538 (11th Cir. 1993) (internal quotation marks and citations omitted).[3] The Eleventh Circuit recently held, a district court properly dismisses defendants where a prisoner, other than naming the defendant in the caption of the complaint, fails to state any

---

[3] Although Plaintiff's claims arise under Bivens, the Eleventh Circuit has held that § 1983 law generally applies to Bivens as well "[b]ecause of the similarity in the causes of action. . . ." Wilson v. Blankenship, 163 F.3d 1284, 1288 (11th Cir. 1998) (citing Abella v. Rubino, 63 F.3d 1063, 1065 (11th Cir. 1995) (*per curiam*).

allegations that associate the defendants with the purported constitutional violation. Douglas v. Yates, 535 F.3d 1316 (11th Cir. 2008) (citing Pamel Corp. v. P.R. Highway Auth., 621 F.2d 33, 36 (1st Cir. 1980) ("While we do not require technical niceties in pleading, we must demand that the complaint state with some minimal particularity how overt acts of the defendant caused a legal wrong.")). Thus, in the absence of an allegation of any connection between any actions of Defendant Carey with the alleged unconstitutional racial abuse, Plaintiff fails to state a claim upon which relief can be granted.

### E. Defendant Gunn

Plaintiff is attempting to hold Defendant Gunn liable on the theory of supervisory liability on the basis of his position as Assistant Warden.[4] However, Plaintiff makes no specific allegations against Defendant Gunn. In fact, the only involvement that Defendant Gunn had in Plaintiff's disciplinary procedures was in providing a memorandum which explained that Plaintiff's letter was not actually received until November 9, 2009, which was why the Incident Report was also dated November 9, 2009. This information is found in the DHO Report, but Plaintiff makes no reference to it in the body of his complaint. As discussed, *supra*, Plaintiff must demonstrate a causal connection between Defendant Gunn and the constitutional violations that Plaintiff is alleging. See Yates, 535 F.3d 1316 (citing Pamel Corp., 621 F.2d at 36; Turner, 995 F.2d at 1538. Thus, in the absence of an allegation of any connection between any actions of Defendant Gunn with the alleged unconstitutional

---

[4]As stated, *supra* in note 3, § 1983 law generally applies to Bivens due to the similarity in the causes of action. Blankenship, 163 F.3d at 1288 (citing Rubino, 63 F.3d at 1065 (11th Cir. 1995). One specific area in which § 1983 law has been applied to Bivens is that of respondeat superior. See Dean v. Gladney, 621 F.2d 1331, 1336 (5th Cir. 1980).

deprivation, Plaintiff fails to state a claim for relief against this Defendant. On that basis alone, Defendant Gunn could be dismissed.

However, even if Defendant Gunn had specifically been mentioned as Defendant Carey's and Ross' supervisor, "supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 & 694 n.58 (1978). To hold an official in a supervisory position liable, Plaintiff must demonstrate that either (1) the supervisor personally participated in the alleged constitutional violation or (2) there is a causal connection between actions of the supervising official and the alleged constitutional violation. Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)).

Defendant Gunn's mere sending of a memorandum that explained that Plaintiff's letter was not received on November 4, 2009 as stamped, but instead was received on November 9, 2009 fails to demonstrate that Defendant Gunn was a participant in the alleged constitutional violation. Defendant Gunn was simply attempting to provide the proper information to explain why the incident report concerning Plaintiff's letter was written on November 9, 2009, when it appeared that it had been received on November 4, 2009.

Similarly, Plaintiff fails to allege a "causal connection" between Defendant Gunn and the purported constitutional violation. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (*per curiam*) (requiring an affirmative causal connection between a defendant an d an alleged constitutional violation). The "causal connection" can be

established "when a history of widespread abuse[5] puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). A causal connection may also be shown when the facts support "an inference that the supervisor [or employer] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003). Plaintiff has alleged neither with respect to Defendant Gunn.

### III. CONCLUSION

For the reasons stated above, the Court **REPORTS** and **RECOMMENDS** that Plaintiff's complaint be **DISMISSED** for failure to state a claim upon which relief can be granted.

SO REPORTED and RECOMMENDED this __ day of October, 2010, at Augusta, Georgia.

*[signature]*
W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[5] The standard for demonstrating "widespread abuse" is high. In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." Brown, 906 F.2d at 671 (emphasis added).